# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**EARLENE PATRICK**                                                                     **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 3:10-CV-582-TSL-MTP**

**MICHAEL J. ASTRUE,**                                                **DEFENDANT**
**Commissioner of Social Security**

## REPORT AND RECOMMENDATION

Plaintiff Earlene Patrick brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner denying her application for a period of disability and supplemental security income. The matter is before the Court on the Commissioner's [18] Motion to Affirm his decision and on Plaintiff's [16] Motion for Summary Judgment.[1] Having considered the pleadings, the transcript of the records, and the applicable law, and being thus fully advised in the premises, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff applied for supplemental security income ("SSI") in April 2007. ([12-5] at 10). Plaintiff also applied for disability insurance benefits at the same time. ([12-5] at 13). Both claims were denied on August 30, 2007. ([12-3] at 10-11). Both claims were reconsidered and again denied in September 2007. ([12-3] at 12-13). Plaintiff filed for a hearing in November 2007. ([12-4] at 23-24). The hearing was held in Hattiesburg, Mississippi on September 18, 2009. ([12-2] at 26). The Administrative Law Judge ("ALJ") rendered his decision on November

---

[1]Plaintiff's counsel obtained an extension of time to file a rebuttal memorandum. *See* [20]; Text Only Order (Dec. 5, 2011). However, no such memorandum was filed.

25, 2009, denying Plaintiff's claims for benefits. ([12-2] at 8). Plaintiff's request for review by the Appeals Council of the ALJ's decision was denied on August 13, 2010. ([12-2] at 2). Plaintiff began this action on October 19, 2010. ([1] at 1-3).

## FACTUAL/MEDICAL HISTORY

Plaintiff was born March 5, 1963. ([12-6] at 2). The Disability Report shows that she completed the 7th grade in 1978. ([12-6] at 13). Her primary work history was in the poultry processing industry, hanging chickens on the line to be marinated. ([12-6] at 9-10). Plaintiff is claiming benefits beginning March 16, 2007. ([12-5] at 14).

Plaintiff sought treatment at the Weems Community Mental Health Center ("Weems") in Scott County, Mississippi in early 2005 for problems related to anxiety and depression.[2] ([12-7] at 9-12). On April 6, 2005, she went to Weems complaining of stress and irritability. ([12-7] at 5). Plaintiff "presented with irritability, verbal aggression, poor interpersonal behavior, mood swings, and anger outbursts." ([12-7] at 2). She stated that she had been taking a "nerve pill" since the age of 15, but with only partial compliance; she had not previously been admitted for inpatient treatment. ([12-7] at 5). Weems on April 6, 2005 assessed her as follows:

| | |
|---|---|
| Axis I: | 1. Depressive Disorder NOS |
| | 2. Rule Out Bipolar, Type II |
| Axis II: | Deferred |
| Axis III: | 1. Arthritis |
| | 2. Iron Deficiency Anemia |
| Axis IV: | 1. Single Mother of Two Young Children from two Different Relations |
| | 2. Unemployed |
| | 3. Uninsured |

---

[2]Plaintiff previously applied for benefits in 2005, ([12-5] at 2-9), which is not before the Court. However, a review of relevant medical records is necessary to consider her 2007 application now under review.

                        4. Poor Relations with Father
Axis V:        60[3]

([12-7] at 6). Weems provided Plaintiff with two months of samples of Wellbutrin[4] XL 150 mg to take one tablet in the morning.

At a follow-up visit on June 8, 2005, Plaintiff reported a "better mood, decreased irritability, and improved interpersonal behavior." ([12-7] at 2). Weems at this time assessed her as follows:

Axis I:        1. Depressive Disorder NOS
                    2. Alcohol Abuse
Axis II:       Deferred
Axis III:      1. Arthritis
                    2. Iron Deficiency Anemia

*Id.*[5] Weems continued treating Plaintiff with Wellbutrin at the same dosage and frequency.

In July 2005, Plaintiff received a psychiatric review from Dr. Helen Patterson, Ph.D., a state agency consultant, ([12-2] at 14), that described her condition as not severe. ([12-7] at 23). Dr. Patterson confirmed the diagnosis of depression, but because of treatment with Wellbutrin,

---

[3] Axis V is also known as a global assessment of functioning ("GAF"). "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd v. Apfel*, 239 F.3d 698, 701 n.2 (5th Cir. 2001) (quoting Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994) (hereinafter "DSM-IV")). A GAF score of 60 reflects "moderate symptoms (e.g. flat and circumstantial speech, occasional panic attack) OR any moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 700.

[4] Wellbutrin is the "trademark for a preparation of bupropion hydrochloride." Dorland's Illustrated Medical Dictionary (hereinafter "Dorland's"), 1985 (29th ed. 2000). Buporprion hydrochloride is "a monocyclic compound structurally similar to amphetamine, used as an antidepressant and as an aid in smoking cessation to reduce the symptoms of nicotine withdrawal; administered orally." *Id.*, at 253.

[5] There were no assessments for Axis IV and Axis V.

Plaintiff's functional limitations were mild with no periods of decompensation. ([12-7] at 23-33). Dr. Patterson determined that her condition did not satisfy the requirements to receive benefits. ([12-7] at 34).[6]

On August 8, 2007, Plaintiff received a comprehensive mental status examination from Dr. Jan Boggs, Ph.D.[7] Dr. Boggs diagnosed Plaintiff with generalized anxiety disorder and somatization[8] disorder. Dr. Boggs described Plaintiff's mental status as follows:

> The claimant was oriented to time, place, and situation. . . . [H]er mood did not seem particularly dysphoric. There was more somatization and immaturity of perception, personality. . . . There have been no delusional or hallucinatory experiences. She loses her temper when stressed by her children. . . The claimant has felt suicidal due to loss of her jobs and bills but tries not to think about it. . . There have been paranoid perceptions since youth, and this has been particularly acute on the job. . . . The claimant has had problems recalling dates. Her remote recall was adequate. She appears to be of low average intelligence. She was slow to focus on the thought and memory questions and managed only four forward and three in reverse. She remembered two of five recent items. She was fair on grocery store arithmetic and daily problem solving situations. She did okay on proverbs.

([12-7] at 66-67) (original paragraphing of report eliminated). Dr. Boggs determined that Plaintiff would have difficulty sustaining routine tasks without proper medication and mental health intervention. ([12-7] at 67).

---

[6]As the ALJ observed, "[t]here are lapses in the [Plaintiff's] medical case," and her "allegations of frequent pain and lack of focus are not substantiated by a frequency in medical visits." ([12-2] at 18). Indeed, there is a gap in the record between 2005 and 2007 involving her medical treatment. In March 2007, September 2007, and July 2009, Plaintiff was treated at the Sebastopol Clinic and Eady Chiropractic for complaints of body pain. This physical condition is not significant to her 2007 application as it is based on Plaintiff's mental impairments.

[7]Dr. Boggs is a consultative examiner. ([12-2] at 14).

[8]Somatization is "in psychiatry, the conversion of mental experiences or states into bodily symptoms." Dorlands's, at 1663.

On August 30, 2007, Plaintiff received a psychiatric review from Dr. David Powers, Ph.D., a state agency consultant, ([12-2] at 17), for a Residual Functional Capacity[9] ("RFC") assessment. ([12-7] at 69). This review listed anxiety as the cause of limitations, and that this caused her to be moderately limited in maintaining social functioning and concentration, persistence, or pace–an increase in limitation since the previous review. ([12-7] at 69-79). Plaintiff was still described as experiencing no episodes of decompensation. ([12-7] at 79). The RFC assessment determined:

> Residual functional capacity allows for routine, repetitive tasks here. Claimant can concentrate adequately and attend to tasks to the extent that simple work is possible. Claimant can avoid hazards, remember and understand basic tasks and carry them out. Claimant can relate to co-workers and supervisors and can psychologically complete a normal workweek. There are no severe limitations that would preclude simple work.

([12-7] at 85).

At the recommendation of her attorney,[10] Plaintiff visited Dr. Schneider, a psychiatrist, on August 19, 2009. ([12-7] at 108). Dr. Schneider found that Plaintiff was mildly mentally retarded.[11] ([12-7] at 108-09). Dr. Schneider diagnosed Plaintiff as follows:

Axis I:  1. Major Depressive Disorder, Recurrent, Severe, with Paranoia
         2. Pain Disorder
         3. Social Phobia

---

[9]"Residual functional capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

[10]Plaintiff is represented in this appeal by different counsel than the attorney who represented her throughout the administrative proceedings.

[11] Plaintiff scored an overall IQ of 63 on the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III"). ([12-7] at 109).

5

|              |                         |
|--------------|-------------------------|
| Axis II:     | 4. Agoraphobia[12]      |
|              | 1. Mild Mental Retardation |
| Axis III:    | 1. Degenerative disc disease |
|              | 2. Arthritis            |
|              | 3. Neuropathy[13]       |
|              | 4. High blood pressure  |
| Axis IV:     | 1. Financial stress     |
| Axis V:      | GAF 40[14]              |

([12-7] at 110). Dr. Schneider determined that because of her depression and pain, Plaintiff was "100% and permanently occupationally disabled." *Id.*

## BURDEN OF PROOF

In *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.

---

[12]Agoraphobia is "intense, irrational fear of open spaces, characterized by marked fear of being alone or of being in public places where escape would be difficult or help might be unavailable. It may be associated with panic attacks . . . or may occur independently . . . ." Dorland's, at 40.

[13]Neuropathy is
a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown. Known etiologies include complications of other diseases (e.g., *diabetic n.*, *amyloid n.*, *porphyric n.*) or of toxic states (e.g., *arsenic n.*, *isoniazid n.*, *lead n.*, *nitrofurantoin n.*). Neuropathies affecting a specific nerve may be named for the nerve (e.g. *femoral n.*). The terms *mononeuropathy* and *polyneuropathy* may be used to denote whether one nerve or several are involved. *Encephalopathy* and *myelopathy* are corresponding terms referring to the brain and spinal cord, respectively.
*Id.* at 1212 (emphasis in original).

[14]"A GAF between 31 and 40 means that there is some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Ducre v. SBC-Southwestern Bell*, No. SA-04CA-835-XR, 2007 WL 128900, at *2 (W.D. Tex. Jan. 12, 2007).

Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1998):

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

(citations and footnotes omitted).[15] A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at 475.

## THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS IN THIS CASE

After consideration of the record, the ALJ rendered his decision on November 25, 2009. ([12-2] at 11-20). The ALJ found that Plaintiff met the insured status requirement of the Social Security Act through March 31, 2010. ([12-2] at 13). At step one of the five-step evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 16, 2007, the alleged onset date of Plaintiff's claim for benefits. *Id.* At step two, the ALJ found that Plaintiff

---

[15]20 C.F.R. § 404.1520 sets forth the five-step sequential analysis applicable to an application for a period of disability or disability insurance benefits (or both). The same five-step sequential analysis for SSI is set forth in 20 C.F.R. § 416.920.

suffers from the following severe impairments: anxiety and depression. *Id.*[16] The ALJ rejected the diagnosis of mental retardation because: he found the diagnosis to be inconsistent with the evidence of Plaintiff's daily living, there is no evidence in the record of academic limitations, there was no mention of deficits of adaptive functioning, and there were no previous notations of cognitive deficits by treating mental health sources. ([12-2] at 14-15).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1. ([12-2] at 15). Next the ALJ assessed Plaintiff's RFC, and found that she could perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff is limited to routine, repetitive task, simple job instructions, and simple job decisions. She can adapt to a work routine involving repetitive tasks and should not be required to perform in a rapidly changing work environment. ([12-2] at 16). In making this determination, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,[17] and also considered opinion evidence.[18] *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but

---

[16]He also determined that Plaintiff's history of alcohol abuse was not severe. ([12-2] at 14). Further, the ALJ determined that arthritis and fibromyalgia were not medically determinable ailments with respect to Plaintiff. ([12-2) at 14). "Arthritis was barely mentioned in the record and when it was, it was diagnosed by . . . a psychologist." *Id.* There was no explanation of fibromyalgia other than it was apparently diagnosed by a chiropractor and "was not mentioned in the treatment notes". *Id., see* ([12-7] at 103-07).

[17]*See* 20 C.F.R. §§ 404.1529, 416.929 and SSRs 96-4p, 96-7p.

[18]*See* 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC assessment and did not preclude work activity. ([12-2] at 17, 19).

At step four, the ALJ determined Plaintiff is capable of performing past relevant work. ([12-2] at 19). Her previous occupations of "poultry hanger, hand packager, and poultry dresser... do not require the performance of work-related activities precluded by [Plaintiff's RFC]." *Id.*[19] Because the ALJ determined that Plaintiff was capable of her past relevant work, she was not disabled from March 16, 2007, through the date of his decision. ([12-2] at 20).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted). However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd,* 239 F.3d at 704 (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's,

---

[19]*See* ([12-2] at 19 (discussing the Vocational Expert's testimony)).

9

"even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

## THE ISSUES

Plaintiff raises two issues for this Court to review: 1.[20] The ALJ's rejection of Plaintiff's medically determined impairment of mental retardation is not based upon substantial evidence; 2.[21] the ALJ's RFC assessment is not based upon a function by function analysis of Plaintiff's ability to perform work-related mental activities. ([17] at 1).

### 1.

The Court finds that the record supports the Commissioner's position that the ALJ properly assessed Dr. Schneider's diagnosis of mental retardation. Plaintiff asserts that the ALJ's rejection of the diagnosis is based on "Dr. Schneider's failure to mention 'deficits of adaptive functioning' associated with her quitting school in the 7th grade." ([17] at 5). The ALJ noted, however, that in his diagnosis Dr. Schneider cited no factors other than Plaintiff's WAIS-III scores below 70. ([12-2] at 14, [12-7] at 109). Because of this, the ALJ contacted Dr. Schneider

---

[20] Although the Commissioner raises three separately worded issues in its Memorandum in Support of the Commissioner's Decision, the Court's interpretation that the first and second issues addressed by the Commissioner are subsumed by Plaintiff's first issue is supported by the Commissioner's discussion of his first two issues under a single heading. ([19] at 1, 8-13).

[21] The Commissioner's third issue corresponds to Plaintiff's second issue.

10

to find out if there were other factors that went into his diagnosis. ([12-2] at 14). Dr. Schneider replied that he had also considered "the Mental Status Exam, an examination of [Plaintiff's] academic record, and her presentation during the interview." ([12-7] at 111). But the ALJ in his decision pointed out that in Dr. Schneider's report, he stated that Plaintiff had dropped out of school because of "her social reactivity, depression, and panic attack" and because "she had missed so many days and her emotional reactions had worsened," not necessarily because she had academic difficulties. ([12-2] at 14, [12-7] at 108).

Further, Dr. Schneider in his report found that Plaintiff could not "sit or stand for any length of time" and could not "follow even simple instructions." ([12-7] at 110). The ALJ appropriately points out the incongruity between this diagnosis and his validation of her WAIS-III scores because she would have been required to sit for the examination and follow its instructions. ([12-2] at 18).

The ALJ further concluded that Dr. Schneider made these assessments far beyond his specialty and that his "opinion [was] wildly inconsistent with this [Plaintiff's] activities of daily living." ([12-2] at 18). Substantial evidence in the record supports this conclusion. At the hearing, Plaintiff testified that she had filled out job applications ([12-2] at 30); passed a driver's license test ([12-2] at 30-31); raises two children by herself, one of whom has Attention Deficit Hyperactive Disorder ("ADHD") and causes her a lot of stress ([12-2] at 37); does housework ([12-2] at 35); manages her own money and pays her bills ([12-2] at 39); cooks meals for her family ([12-2] at 39-40); grocery shops with a list that she writes ([12-2] at 40); is able to drive, *id.*; and watches television, *id.*, and reads, ([12-2] at 37).

Plaintiff's argument that the ALJ inconsistently considered Plaintiff's mental retardation

severe when he considered whether it met a listing, ([17] at 6]), despite his determination that it was not medically determinable, ([12-2] at 14), is without merit. The ALJ determined that her mental limitations, "considered singly and in combination, do not meet or medically equal" a listing. ([12-2] at 15).

Plaintiff argues that the ALJ "is 'not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings.'" ([17] at 5 (quoting *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000))). While this is true as a general proposition, it has no application here because the ALJ in this case was not making a medical judgment but rather rejecting the judgment of a medical professional so far as it was inconsistent with the record as a whole. ([12-2] at 19). The ALJ may give less weight to an opinion when there is good cause shown to do so. *Loza*, 219 F.3d at 395. Here, the ALJ amply demonstrated the inconsistencies between Dr. Schneider's diagnosis of Plaintiff and the rest of the record and was well within his authority to accord it less weight.

The ALJ's decision to reject Dr. Schneider's diagnosis of mental retardation as not medically determinable is supported by substantial evidence.

**2.**

The Court also finds that the record supports the Commissioner's argument that the ALJ properly evaluated Plaintiff's RFC. Plaintiff argues that the ALJ was required by *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), to consider each of the twenty mental activities separately. ([17] at 6-7). However, *Myers* establishes only that when determining exertional capacity, the ALJ must consider the seven strength demands individually. *Myers*, 238 F.3d at 620. *Myers* does not require the same "special technique" of analysis for mental limitations, as Plaintiff asserts. ([17]

at 7). In this case, the ALJ determined that Plaintiff "has the [RFC] to perform . . . at all exertional levels" and has only "nonexertional limitations." ([12-2] at 16).

As the Commissioner observes, the ALJ is under no obligation to consider the twenty mental activities separately. ([19] at 14). The Program Operations Manual System (POMS) section DI 25020.010.B.1 states that:

> **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of [the MRFC form] **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

Program of Operations Manual System § DI 25020.010B.1 (emphasis in original), available at http://policy.ssa.gov/poms.nsf/lnx/0425020010. Further, the twenty mental activities were considered by Dr. Powers[22] when he completed his mental RFC assessment, ([12-7] at 83-84), and the ALJ "assign[ed] considerable weight to the . . . opinion of Dr. Powers." ([12-2] at 19).

The ALJ properly weighed the evidence and applied the correct legal standards. His evaluation of Plaintiff's RFC is also supported by substantial evidence in the record.

## CONCLUSION/RECOMMENDATIONS

The undersigned agrees with the Commissioner's decision that Plaintiff is not entitled to disability benefits or SSI under the Social Security Act and finds that the decision is supported by substantial evidence and utilizes correct legal standards. Based on the foregoing, it is the recommendation of the undersigned that the Commissioner's [18] Motion to Affirm be **GRANTED**. It is further recommended that the Plaintiff's [16] Motion for Summary Judgment

---

[22]*See* discussion *supra* p. 5.

be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contain within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).[23]

THIS, the 13th day of June, 2012.

s/ Michael T. Parker
United States Magistrate Judge

---

[23] *Douglass* referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.